IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-PO-43-DCP |
| | ) | |
| SARTAJ S. BRAR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court on the Defendant's Motion to Suppress Blood Alcohol Test Results [Doc. 2], filed on June 1, 2018. *See* 28 U.S.C. § 636(b). Defendant Sartaj S. Brar is charged with operating a motor vehicle with a blood alcohol concentration ("BAC") of .08 or greater (TE41 7157349) and with speeding (TE41 7157350), both petty offenses allegedly occurring in the Great Smoky Mountains National Park on January 27, 2018. The Defendant asks the Court to suppress the results of a blood alcohol test performed with an Intox EC/IR II machine, following his arrest for the pending petty offenses, because a Tennessee statute requiring that a contingency fee for alcohol-related convictions be paid to the Tennessee Bureau of Investigation ("TBI") violates his right to due process and a fair trial. The Government opposes [Doc. 5] suppression, arguing that the Tennessee statute is irrelevant in this federal case and that the Defendant's test results are accurate and reliable.

The parties appeared before the undersigned on July 26, 2018, for a hearing on the motion. Assistant United States Attorney LaToyia T. Carpenter appeared on behalf of the Government. Attorney Bryan E. Delius represented Defendant Brar, who was also present. Based upon the parties' arguments, the evidence presented, and the relevant case law, the Court discerns

no due process violation in this case. Thus, the Defendant's motion [**Doc. 2**] is **DENIED** for the reasons discussed herein.

I.     **BACKGROUND AND POSITIONS OF THE PARTIES**

From July 1, 2013,[1] through May 21, 2018, Tennessee law required the collection of "a blood alcohol or drug concentration test (BADT) fee in the amount of two hundred fifty dollars ($250)" from a defendant convicted of driving under the influence of an intoxicant ("DUI") pursuant to Tennessee Code Annotated § 55-10-401 and who had "taken a breath alcohol test on an evidential breath testing unit provided, maintained, and administered by a law enforcement agency for the purpose of determining breath alcohol content or submitted to a chemical test to determine the alcohol or drug content of the blood or urine." Tenn. Code Ann. § 55-10-413(f)(1) (effective July 1, 2013). Tennessee law required that the BADT fees be deposited in the TBI's Toxicology Unit Testing Fund for use by the TBI to fund forensic scientist positions, to buy equipment and supplies, to pay for training, or for any purpose that allowed the TBI to operate efficiently and expeditiously. Tenn. Code Ann. § 55-10-413(f)(3) (amended May 21, 2018).

On January 27, 2018, Ranger Samuel Heath Soehn conducted a traffic stop of a BMW, driven by Defendant Brar, in the Great Smoky Mountains National Park. Ranger Soehn transported Brar to the Pigeon Forge Police Department ("PFPD"), where he tested Brar's BAC using an Intox EC/IR-II intoximeter. The intoximeter immediately provided a receipt stating that the Defendant's BAC was 0.135. Ranger Soehn arrested Brar for DUI and speeding.

---

[1] While the TBI's collection of a BADT fee predates 2013 version of the statute, the Tennessee legislature codified the BADT fee system at issue in this case in the version of the statute effective on July 1, 2013. *See generally State v. Decosimo*, No. E2017-00696-CCA-R3-CD, 2018 WL 733218, \*\*2-3 (Tenn. Crim. App. Feb. 6, 2018), *rev'd*, No. E2017-00696-SC-R11-CD, 2018 WL 4022338 (Tenn. Aug. 23, 2018).

On February 6, 2018, the Tennessee Court of Criminal Appeals held that Tennessee Code Annotated § 55-10-413(f) violates substantive due process under both the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution. *State v. Decosimo*, No. E2017-00696-CCA-R3-CD, 2018 WL 733218, \*\*8, 18 (Tenn. Crim. App. Feb. 6, 2018), *rev'd*, No. E2017-00696-SC-R11-CD, 2018 WL 4022338 (Tenn. Aug. 23, 2018). The Tennessee appellate court determined that TBI forensic scientists have a pecuniary interest in BADT fees, that the TBI and the forensic science division are "dependent on . . . BADT fees," and that the "fee system at issue . . . calls into question the trustworthiness of the TBI forensic scientists' test results[.]" *Id.* at \*\*16-17. Although the court found that TBI scientists had no adjudicatory functions and that they are employees of a state law enforcement agency, the court opined that TBI scientists "must serve as objective, independent experts in order to protect the integrity of the criminal justice system." *Id.* at \*\*13, 16. The court concluded that the BADT fee system shakes the public's confidence in the testing and testimony of TBI scientists and that this appearance of bias cannot be overcome by "procedural safeguards, such as independent testing of samples, a thorough cross-examination of the forensic scientist at trial, or a jury instruction addressing the credibility of TBI forensic scientists[.]" *Id.* at \*\*17-18.

Effective May 21, 2018, the Tennessee legislature amended § 55-10-413(f) to require BADT fees to be deposited into the general fund, to be used "as appropriated by the general assembly." Tenn. Code Ann. § 55-10-413(f)(2)-(3). On August 23, 2018, the Tennessee Supreme Court reversed the ruling in *Decosimo*, holding that the BADT fee system in place prior to the May 2018 amendment does not violate due process, because "any institutional financial incentive the BADT fee statute creates is far too remote to constitute a possible temptation to any reasonable forensic scientist to manipulate or falsify test results to increase conviction rates and generate

BADT fees." *State v. Decosimo*, No. E2017-00696-SC-R11-CD, 2018 WL 4022338, *15 (Tenn. Aug. 23, 2018).

The Defendant argues that his January 27, 2018 test results from the Intox EC/IR-II intoximeter must be suppressed, because the fee-for-conviction system established by Tennessee Code Annotated § 55-10-413(f), in effect at the time, violates his right to due process and a fair trial. He asserts that the Government intends to use the results of his breath test and the testimony of TBI Forensic Scientist Dave Ferguson at trial. The Defendant maintains that at the time that the intoximeter at the PFPD was last maintained, calibrated, and certified on January 26, 2018, and at the time law enforcement administered the breath test to him on January 27, 2018, TBI scientists had a direct monetary interest in DUI convictions. The Defendant contends that the Tennessee BADT fee system makes TBI revenue dependent on DUI convictions, which in turn taints the trustworthiness of the TBI scientists' test results. He argues that, while federal courts are not required to collect and submit the BADT fee, the certifications by a TBI scientist in this case violate substantive due process.

The Government responds that the question of whether the Tennessee BADT fee system is unconstitutional is irrelevant in this case, because the federal government does not collect BADT fees. Instead, it contends that federal DUI convictions are based upon the Code of Federal Regulations ("CFR"), not Tennessee law; and, thus, the unconstitutionality of a Tennessee statute does not affect Defendant Brar's due process rights. The Government also argues that the Defendant's right to due was upheld in this case because his BAC was accurately tested by a properly calibrated intoximeter. In that regard, the Government asserts that the intoximeter generated the BAC results in this case, outside the presence of a TBI forensic scientist, and after a

self-test insured that the machine was working properly. Moreover, it contends that TBI Special Agent Dave Ferguson will testify that the BAC test result in this case is accurate and reliable.

## II. FINDINGS OF FACT

At the July 26 hearing, the Government presented the testimony of United States Park Ranger Samuel Heath Soehn, who works in the Great Smoky Mountains National Park, and Special TBI Agent Dave Ferguson, a forensic scientist for the TBI. The Court finds only portions of the witnesses' testimony are relevant to the instant inquiry and, thus, makes the following findings of fact with regard to the question before it:

The Pigeon Forge Police Department has an Intox EC/IR II intoximeter, which was provided by and is maintained by the TBI. Special TBI Agent Dave Ferguson maintains all breath testing instruments in East Tennessee, including the intoximeter at the PFPD.[2] He checks the calibration of the intoximeter with a known ethanol standard provided by a national supplier and certifies the intoximeter every ninety (90) days. Agent Ferguson checked the calibration on the PFPD intoximeter on January 26, 2018, with three known standards and tested the intoximeter with each standard three times, with the following results: Using a standard of .079 ethanol concentration, the PFPD intoximeter gave a test result of .078 BAC three times. Using a standard of .039 ethanol concentration, the intoximeter gave a test result of .038 BAC three times. Using a standard of .196 ethanol concentration, the intoximeter gave a test result of .193 BAC twice and .192 BAC once. Based on these results, along with the machine's proper performance of a blank test, Agent Ferguson certified the PFPD intoximeter and entered the results of his testing into a

---

[2] The Defendant stipulated that Agent Ferguson is qualified to testify about the Intox EC/IR II intoximeter.

computer. Another TBI analyst verified Agent Ferguson's testing from the information on the computer, and the TBI issued a certificate for this machine on February 27, 2018.

Agent Ferguson explained that the intoximeter determines BAC by testing the alcohol level from a deep alveolar air sample from the subject and printing out the results on a test strip. Prior to each test, the intoximeter conducts a blank test (a test of the air inside the chamber before the subject blows into the machine) to confirm no alcohol is detected inside the machine. After testing the first breath sample from the subject, the intoximeter conducts another blank test, and then the subject blows into the machine a second time. The final test result is the lower of the two test results obtained from the two breath samples. Agent Ferguson testified that if the intoximeter were to malfunction, it would not give a test result. He stated that the subject must be observed for twenty minutes to allow all "mouth alcohol" to dissipate before providing the first breath sample. He said that if the intoximeter detects mouth alcohol in the breath sample, it "kicks the test out." Based upon his training, Agent Ferguson opined that the PFPD intoximeter was working properly on January 27, 2018.

Agent Ferguson was not present when the Defendant was tested on the PFPD intoximeter on January 27, 2018. Agent Ferguson testified that he has worked for the TBI since 1997; and during that time, he has never altered any test results, received monetary compensation for specific test results, or given false testimony.

Ranger Samuel Heath Soehn stopped Defendant Brar at 11:10 p.m., on January 27, 2018, in the Great Smoky Mountains National Park. Ranger Soehn transported Defendant Brar to the PFPD to administer a breath-alcohol test, because the Park Service does not have an intoximeter and the PFPD had the closest intoximeter. At the PFPD, Ranger Soehn typed the following information into the intoximeter: The Defendant's name, driver's license information,

6

gender, race, date of birth, whether an accident had occurred, and the time and county of arrest. Then, he pressed "start" on the intoximeter. After a twenty-minute delay, during which Ranger Soehn observed the Defendant, the intoximeter conducted a self-test and automatically generated a receipt showing that the result of the self-test was a series of zeros. Then Defendant Brar blew into the intoximeter, and it printed a receipt with the results of that test. Other than the above listed information typed in by Ranger Soehn, all other information on the receipt was generated by the machine and could not have been altered by the ranger. No one from the TBI was present during the Defendant's breath test on January 27, 2018.

### III. ANALYSIS

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" Defendant Brar argues that the collection of BADT fees contingent upon DUI convictions, which was required by Tennessee law at the time of his January 27, 2018 intoximeter test, violates his right to the due process of law and a fair trial. He maintains that although the federal government does not collect BADT fees, the "contingency-fee system" established by Tennessee Code Annotated § 55-10-413(f) taints the calibration of the PFPD intoximeter and the interpretation of breath-alcohol test results.

The Due Process Clause "protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' *Rochin v. California*, 342 U.S. 165, 172 . . . (1952), or interferes with rights 'implicit in the concept of ordered liberty,' *Palko v. Connecticut*, 302 U.S. 319, 325-26 . . . (1937)." *Salerno*, 481 U.S. at 746. Procedural due

7

process requires that government action, which comports with substantive due process, "must still be implemented in a fair manner." *Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)). With regard to substantive due process, "the Fifth and Fourteenth Amendments' guarantee of "due process of law" . . . include[s] a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301-02 (1993).

The Court finds that Defendant Brar is alleging a violation of substantive due process in this case, i.e., that the potential for tainted test results or testimony in relation to the intoximeter due to the contingency-fee system under Tennessee law shocks the conscience. The Court respectfully disagrees. As will be discussed herein, the Court finds (1) the TBI forensic scientist has neither the incentive, nor the ability to alter the results of the intoximeter breath test in a federal case and (2) that any expert testimony by a TBI scientist in this case will occur after a change in Tennessee law, repealing that part of the BADT fee system about which the Defendant complains.

Defendant Brar asks the Court to suppress the Intox EC/IR II intoximeter test results in this case, contending that the unconstitutional BADT fee system violates his right to due process of law. However, the federal government does not collect BADT fees for federal DUI convictions. Thus, the Court agrees with the United States that the offending government action targeted by Defendant Brar is irrelevant to this case, and, therefore, the Court need not analyze whether that action shocks the conscience.

The Defendant argues that even though BADT fees are not collected in federal cases, the unconstitutional contingency-fee system still affects the calibration of the intoximeter in

8

this case because the TBI agent performing the calibration does not know whether the machine he or she calibrates will be used in a state case or a federal case. The Defendant contends that because many more state arrestees are tested, than federal arrestees, the TBI agent's neutrality is implicated by the contingency-fee system in all cases.

The Tennessee Supreme Court recently rejected the argument that an individual TBI scientist has the ability or the incentive to influence breath test results. *Decosimo*, 2018 WL 4022338, \*\*14-15. First, the Tennessee Supreme Court, like the Tennessee Court of Appeals, held that TBI forensic scientists have no adjudicative function. *Id.* at \*13. Instead, the Tennessee Supreme Court observed that TBI scientists "simply perform scientific tests on evidence samples submitted to them by law enforcement" and must "conduct scientific tests in accordance with uniform procedures and standards[.]" *Id.* Thus, the TBI scientist has little, if any, discretion in determining BAC. *Id.*

Second, the Tennessee Supreme Court determined that TBI scientists are salaried employees with no control over the collection or allocation of BADT fees and, thus, no incentive to falsify or alter BAC test results:

> With the availability of independent testing, the uniform scientific standards applicable to the TBI's forensic testing, the TBI's internal review mechanisms, and the TBI's response to a forensic scientist who made a mistake, it strains logic to suggest that a reasonable forensic scientist would engage in criminal, unethical, and career-ending conduct to alter or fabricate forensic scientific test results on the hope that: (1) the test results might lead to criminal charges of a BADT fee offense; (2) the criminal charges might result in conviction of a BADT fee offense; (3) the BADT fee might be collected expeditiously; (4) the TBI director might use BADT fees to retain the TBI forensic scientist instead of using the monies for some other statutorily permissible purpose; and (5) the General Assembly will not appropriate the BADT fees to another purpose within the TBI. Indeed, only an irrational and unreasonable TBI forensic scientist would risk losing a salaried position and continued

employment in this manner when BADT fees amount to less than five percent of the TBI's overall budget.

*Id.* at 15.

In the instant case, the Court likewise concludes that Agent Ferguson has no ability or incentive to calibrate the PFPD intoximeter in order to alter the Defendant's BAC test results. Defendant Brar's breath sample was tested by an intoximeter.[3] Based on the testimony at the motion hearing, the Court finds that Agent Ferguson did not have the ability to calibrate the PFPD intoximeter such that it would provide an erroneously high BAC test result. Agent Ferguson testified that his only contact with the PFPD intoximeter near the time of the Defendant's test was to calibrate it on January 26, 2018. He stated that he uses a known standard from an independent national company to calibrate the intoximeter. Agent Ferguson also testified that his calibration is then reviewed by another TBI scientist, who issues the certificate for the machine. The Court finds that these procedures were followed in this case. Additionally, the Court observes that in *Decosimo*, a three-judge panel of Hamilton County Criminal Court judges found that "'[p]resumably, it is impossible to calibrate breath-test machines to overstate any positive result. Thus, no financial interest on the calibrator's part can affect the results of breath tests.'" *Id.* at *7 (observing that the trial judges rejected the defendants' constitutional challenge to Tenn. Code Ann. § 55-10-413(f)).

The Court also finds that the intoximeter in this case was not susceptible to tampering that would yield a falsely high BAC test result. The intoximeter performed a self-test

---

[3] *Decosimo* involved twenty-three defendants who were charged with DUI in the Hamilton County Criminal Court and who provided either breath or blood samples to law enforcement. *Id.* at *2. "Blood samples were sent to the TBI forensic services division for testing. Breath samples were tested by a model EC/IR II breath analysis machine calibrated, maintained, and certified by the TBI." *Id.*

before the Defendant was tested and would not have generated a test result if it were malfunctioning. Also, the intoximeter provides the lower of the two breath sample results as the BAC test result. The Court finds that there was no opportunity for Ranger Soehn to alter the results of the breath test, because the only information he entered into the machine was identifying information.[4]

The Court also finds that the BADT fee system does not create an incentive for Agent Ferguson to testify falsely. First, no BADT fees are collected in federal cases, so the TBI has no possibility of pecuniary gain from this Defendant's conviction. Second, the Tennessee legislature amended § 55-10-413(f), effective May 21, 2018, to require that all BADT fees be deposited into the general fund. Any testimony by a TBI forensic scientist in this case will necessarily occur after the BADT fee system, which the Defendant challenges, has been abolished. Third, like the Tennessee Supreme Court, the undersigned finds that any incentive created by the former BADT fee system, in effect at the time the Defendant's BAC was tested, is too remote to create the appearance of impropriety from the use of the BAC test results or Agent Ferguson's testimony in this case. *See id.* at *15. Finally, Agent Ferguson testified that he has never altered any test results, received monetary compensation for specific test results, or given false testimony. In oral argument, defense counsel stated that the Court may credit the testimony of Agent Ferguson. The Court agrees that no basis exists to question Agent Ferguson's credibility with regard to his calibration of the PFPD intoximeter in January 2018. Thus, the Court finds no due process violation stemming from the TBI forensic scientist's testimony in this case.

---

[4] The Court makes no finding at this time with regard to whether Ranger Soehn observed the Defendant without distraction for twenty minutes or checked his mouth prior to administering the breath test on the intoximeter. Instead, the Court finds that the intoximeter was working properly and that Ranger Soehn had no ability to alter manually the test results it generated.

The Court finds that the Defendant's BAC was tested with an accurate intoximeter machine that could not be altered by the calibrating TBI agent. Moreover, the Court finds that the former state BADT fee system did/does not create an incentive for Agent Ferguson to manipulate or falsify either his calibration of the PFPD intoximeter or his testimony. Thus, the Court finds that, under the particular facts of this case, the use of the intoximeter's BAC test results and/or Agent Ferguson's testimony do not violate substantive due process.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that a former Tennessee statute providing that a fee be awarded to the TBI for convictions obtained using a blood or breath test has no effect on this case. Thus, neither the BAC test results from an Intox EC/IR II intoximeter machine calibrated by the TBI, nor the testimony of a TBI forensic scientist, violates the Defendant's right to due process of law and a fair trial. The Defendant's Motion to Suppress Blood Alcohol Test Results [**Doc. 2**] is **DENIED**. This case will be reset for trial.

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge